http://www.va.gov/vetapp16/Files4/1630470.txt

Citation Nr: 1630470 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-34 326 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan

THE ISSUES

1. Entitlement to service connection for a thoracolumbar spine disorder (claimed as a low back disorder), to include as secondary to service-connected posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for a right knee disorder.

3. Entitlement to an initial evaluation in excess of 50 percent for PTSD prior to February 11, 2016.

4. Entitlement to an initial evaluation in excess of 70 percent for PTSD on or after February 11, 2016.

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States
WITNESSES AT HEARING ON APPEAL

The Veteran and M.M.

ATTORNEY FOR THE BOARD

M. Postek, Associate Counsel

INTRODUCTION

The Veteran served on active duty from October 1944 to August 1946.
 
This case comes before the Board of Veterans' Appeals (Board) on appeal from October 2008 and April 2010 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

A videoconference hearing was held before the undersigned Veterans Law Judge in October 2015. A transcript of the hearing is of record. The undersigned Veterans Law Judge held the record open for a 30-day period following the hearing to allow for the submission of additional evidence. Thereafter, the Veteran submitted additional medical evidence that was considered by the Agency of Original Jurisdiction (AOJ) in the March 2016 supplemental statement of the case.

In a November 2015 decision, the Board reopened the low back disorder claim and remanded the case for further development. The case has since been returned to the Board for appellate review.

In February 2010 and July 2010 rating decisions, the RO increased the evaluation for PTSD. While the case was on remand, the RO increased the evaluation for PTSD to 70 percent in a March 2016 rating decision, effective from February 11, 2016. Because these evaluations do not represent the highest possible benefit, the issue is in appellate status and has been recharacterized as stated above. AB v. Brown, 6 Vet. App. 35 (1993).

In addition, the Veteran filed a claim for a total disability rating based on individual unemployability due to service-connected disability (TDIU) in April 2016. If a claimant or the record reasonably raises the question of whether a veteran is unemployable due to the disability for which an increased evaluation is sought, then part and parcel to that claim for an increased evaluation is whether TDIU as a result of that disability is warranted. Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, however, the RO granted entitlement to TDIU in a May 2016 rating decision, effective from February 11, 2016. The Veteran has not expressed disagreement with that decision. Thus, the Board finds that the issue of entitlement to TDIU is not currently in appellate status, and no further action is necessary at this time. See Grantham v. Brown, 114 F.3d 1156, 1158 (Fed. Cir. 1997). The Veteran and his representative may still appeal the May 2016 determination.

This appeal was processed using the Veterans Benefits Management System (VBMS). The Virtual VA claims file contains documents that are either duplicative of the evidence in the VBMS claims file or not relevant to the issues on appeal, with the exception of VA treatment records already considered by the RO and the x-ray report from the February 2016 VA knee examination.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.

REMAND

On review, the Board finds that additional development is necessary prior to final adjudication of the Veteran's claims. Specifically, it appears that there may be outstanding, relevant VA treatment records and in-service clinical treatment records, as detailed in the directives below. 

Regarding the thoracolumbar spine (back) and right knee claims, the October 2009/March 2010 VA examiner determined that the Veteran's current right knee (degenerative joint disease) and back (degenerative joint disease and degenerative disc disease of the thoracic and lumbosacral spine with radiculopathy of the right lower extremity) disorders were less likely as not caused by his in-service ski injury; however, the examiner did not address whether repetitive jumping may have caused the current disorders.

The February 2016 VA examiner determined that it was less likely than not that the Veteran's current right knee (degenerative arthritis) and low back (lumbosacral spine degenerative arthritis and degenerative disc disease with associated lumbar stenosis) disorders were incurred in or caused by service, including any injury or the cumulative effect of repetitive skiing and ski jumping therein. In so finding, the examiner indicated that the Veteran had a normal separation examination without any back or right knee condition and noted the fact that there were no immediate post-service medical records (civilian or military) documenting any back or right knee condition. The examiner further explained that the findings were related to the natural progression of degenerative arthritis, and the degenerative disc disease of lumbar spine with associated lumbar stenosis was related to the inherited biology and lifelong stress on the Veteran's back and likely not related to a specific injury or event.

Although the examiners addressed questions related to the current right knee and back disorders, it is unclear if the finding on the November 2015 MRI report of an acute to subacute superior T12 compression fracture (reviewed as part of the February 2016 VA examination) is part of the thoracolumbar spine diagnosis already provided or a separately diagnosable disorder. It is also unclear if the examiner considered the complete history of the development of the right knee disorder, to include the Veteran's reports as to intermittent but ongoing symptoms since service. In addition, the Veteran has essentially contended that his service-connected PTSD has caused him current back problems, inasmuch as he fell out of bed when having nightmares, and an opinion addressing this new causal theory is necessary. See October 2015 and December 2015 VA treatment records.

The Board acknowledges the December 2009 and May 2011 opinions from his VA treatment provider in support of these claims; however, the opinions are inadequate because they do not contain a complete rationale.

In addition, the Board notes that updated VA treatment records were added to the claims file in connection with the Veteran's TDIU claim, including an April 2016 mental health treatment record. A supplemental statement of the case (SSOC) has not been issued, and the Veteran has not submitted a waiver of the RO's initial consideration of that evidence. As such, the case should be referred to the AOJ for review and preparation of an SSOC.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should contact the National Personnel Records Center, the Records Management Center, or any other appropriate entity, to request records (to include x-ray reports) of the Veteran's reported treatment at the Army Hospital in Garmisch, Germany, dated in December 1945. It appears that such a request may have been previously initiated, but not completed. See June 1991 original claim and January 1992 3101 printout.

2. The AOJ should secure any outstanding, relevant VA treatment records. The request for VA treatment records should include a search for any records dated from 2008 to April 2011.

3. After completing the foregoing development, the AOJ should refer the Veteran's claims file to the appropriate February 2016 VA examiner, or, if that examiner is unavailable, to another suitably qualified VA examiner for a clarifying opinion as to the nature and etiology of any current thoracolumbar spine and right knee disorder that may be present. An additional examination of the Veteran should be performed if deemed necessary by the individual providing the opinion.

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and statements, as well as the October 2009 VA examination report (with March 2010 clarifying opinion) and February 2016 VA examination report.

The Veteran has essentially contended that his current back and right knee problems are the result of a progressive process following an initial injury during his military service. See, e.g., October 2015 Bd. Hrg. Tr. at 5-7 and January 2016 written statement. He has also contended that his service-connected PTSD has caused him current back problems, as he fell out of bed when having nightmares. See October 2015 and December 2015 VA treatment records.

The Veteran's August 1946 separation examination shows that he twisted his back right side in March 1946. His service records indicate that his duties included serving as an entertainment specialist with the United States Army Ski Team, competing in ski tournaments and ski jumping.

It should be noted that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should identify all current thoracolumbar spine and right knee disorders.

For each diagnosis identified, the examiner should state whether it is at least as likely as not (a 50 percent or greater probability) that the disorder manifested in or is otherwise related to the Veteran's military service, including the reported skiing injury and/or the cumulative effect of repetitive skiing and ski jumping therein.

The examiner should also state whether it is at least as likely as not (a 50 percent or greater probability) that the disorder was caused by or permanently aggravated by the October 2015 fall from his bed due to his service-connected PTSD.

In providing this additional opinion, the examiner should also address whether the finding on the November 2015 MRI report of an acute to subacute superior T12 compression fracture is part of the thoracolumbar spine diagnosis already provided by the October 2009/March 2010 VA examiner or a separately diagnosable disorder. See also, e.g., VA treatment records from August 2015 (Veteran fell after slipping on a log) and October 2015/December 2015 (treatment following Veteran's fall out of bed).

The examiner should further discuss the medically known or theoretical causes of any current thoracolumbar spine and right knee disorder and describe how such a disorder generally presents or develops in most cases, in determining the likelihood that the current disorder is related to in-service events as opposed to some other cause.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is as medically sound to find in favor of such a conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

4. After completing the above actions and any other development as may be indicated as a consequence of the actions taken in the preceding paragraphs, the case should be readjudicated by the AOJ on the basis of additional evidence, including all evidence received since the March 2016 SSOC.

If the benefits sought are not granted, the Veteran and his representative should be furnished a supplemental statement of the case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.
The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).